UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY ALLEN HOGAN,

    Petitioner,

v.

                                            Case No. 1:06-cv-531
                                            Hon. Gordon J. Quist

MARY BERGHUIS,

    Respondent.

_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.     Background**

After a jury trial, petitioner was convicted of first-degree home invasion, M.C.L. § 750.110a(2), four counts of firearm larceny, M.C.L. § 750.357b, and felony firearm, M.C.L. § 750.227b. Judgment of Sentence (docket no. 13). Petitioner was sentenced to a term of two years for the felony-firearm conviction, to be followed by concurrent terms of 8 to 20 years for the home invasion and four terms of 2 to 5 years for the firearm larceny convictions. Sent. Trans. at 13-14.

Petitioner, through counsel, presented two issues in a delayed application for leave to appeal to the Michigan Court of Appeals:

    I.    Was there sufficient evidence of all six counts because [petitioner] did not directly possess or aid and abet the possession of the five firearms that the other two men took in the house break-in?

    II.    Should [petitioner] be resentenced because the sentencing judge abused his discretion in overruling [petitioner's] objection to being classified as a leader and because giving [petitioner] ten points under

> offense variable 14 violated the constitutional rights to due process and jury trial and the recent Supreme Court cases of *Blakely* and *Booker*?

Delayed application for leave to appeal (docket no. 13).

The Michigan Court of Appeals denied the delayed application "for lack of merit in the grounds presented." *People v. Ricky Allen Hogan*, No. 260709 (Mich. App. July 6, 2005). Petitioner, through counsel, raised these two issues in an application for leave to appeal to the Michigan Supreme Court, which that court denied. *People v. Ricky Allen Hogan*, No. 129117 (Mich. Oct. 31, 2005). This matter is now before the court on Hogan's petition for habeas corpus, which raises the same two issues. *See* docket no. 1.

## II.   Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Here, petitioner has exhausted all of the issues raised in his petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

2

>An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

3

### III.  Petitioner's habeas claims

### A.  Sufficiency of the Evidence

#### 1.  Legal standard

In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364. Sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis added). In evaluating a sufficiency of the evidence claim, the court views both direct evidence and circumstantial evidence in the light most favorable to the prosecution, drawing all available inferences and resolving all issues of credibility in favor of the factfinder's verdict. *United States v. Rayburn*, 495 F.3d 328, 337-38 (6th Cir. 2007). The reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright v. West*, 505 U.S. 277, 296-97 (1992).

#### 2.  Relevant statutes

In his petition, Mr. Hogan states that there was insufficient evidence to support "all six counts."

The crime of first degree home invasion is codified as follows:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if

>    at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
>    (a) The person is armed with a dangerous weapon.
>
>    (b) Another person is lawfully present in the dwelling.

M.C.L. § 750.110a(2). First degree home invasion is a felony punishable by imprisonment for twenty years or by a fine or both. M.C.L. § 750.110a(5).

The crime of larceny of firearm is codified at M.C.L. § 750.357b, and provides that "[a] person who commits larceny by stealing the firearm of another person is guilty of a felony, punishable by imprisonment for not more than 5 years or by a fine of not more than $2,500.00, or both."

In addition, M.C.L. § 750.227b, possession of a firearm at time of the commission or attempted commission of a felony ("felony firearm"), provides in pertinent part that "[a] person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony . . . is guilty of a felony, and shall be imprisoned for 2 years." M.C.L. § 750.227b(1).

### 3. Summary of the evidence

James Booth testified that on March 17, 2004, petitioner, Shawn Fowler and he decided to go to George Kopulos' house, for the purpose of breaking in and stealing a large quantity of marijuana. Trial Trans. 97-98, 111-12. Booth borrowed a car from his uncle and drove it to Kopulos' house. *Id.* at 97-101. Fowler knocked on the door, but no one answered. *Id.* at 101. Petitioner went into a cellar door and let the other two in. *Id.* at 101, 108-9. They proceeded to a bedroom, in which they saw firearms leaning against the wall in a corner. *Id.* at 109-10, 112-13. Petitioner took one of the firearms, looked at it, put it down and went to look for marijuana. *Id.* Booth then took the firearms, gave them to Fowler, who took them to the car. *Id.* at 101-2, 105, 110,

113-14. Booth went back in the house, took about 10 to 15 one-gallon ziplock bags of marijuana and put the marijuana in the trunk of the car. *Id.* at 101-2, 105, 110, 113-15. Kopulos returned to the house and grabbed Booth and Fowler. *Id.* at 103-4, 108. Petitioner came out of the house and punched Kopulus in the face, allowing Fowler and Booth to get away. *Id.* Then, Booth, Fowler and petitioner drove to petitioner's father's house. *Id.* at 105-6. Petitioner's father (the "elder Mr. Hogan") agreed to let them leave the firearms in a closet. *Id.* at 106. They also gave the elder Mr. Hogan some marijuana. *Id.* Booth, Fowler and petitioner left the rest of the marijuana at another house. *Id.* at 107, 116. The three were arrested a short time later. *Id.* at 116-17.

    Kopulos testified that he left his house in Parma Township at 9:00 or 9:30 a.m. that morning. *Id.* at 73-75. When he returned, Kopulos saw two young men walking out of the house, who claimed they were looking for his daughter. *Id.* at 75-82. Kopulos ran up to the house and confronted two intruders before they came out of the breezeway door. *Id.* at 90. He realized they were stealing a camcorder and walkie-talkies and grabbed them by the shirts. *Id.* at 75-82. A third man came up and punched Kopulos in the nose, which gave him a bloody nose and caused Kopulos to let go of the other two. *Id.* The three intruders got in their car and took off. *Id.* at 80. Kopulos tried to chase them, managed to get the license number and called 911. *Id.* at 81. When he went to the bedroom, Kopulos saw that the firearms were missing. *Id.* at 82. Kopulos stated that his back door into the house, which had been locked, "looked like it might have been pried." *Id.* at 82-83. Kopulos identified trial exhibits 1 through 5, which consisted of two shotguns and three muzzle-loaders, as firearms belonging to him. *Id.* at 85-87.

    The elder Mr. Hogan testified that he gave petitioner, Booth and Fowler permission to store some firearms at his apartment. *Id.* at 119-21. The elder Mr. Hogan described the firearms

6

as "muskets and a shotgun." *Id.* Petitioner told his father that the guns were stolen from someplace in Parma. *Id.* at 122-23. Petitioner and another person brought the firearms into the apartment. *Id.* at 120. The elder Mr. Hogan further testified that Booth, Fowler and petitioner also had "[a] big bag of weed" that they took with them. *Id.* at 121-22. The police arrived later that day and took the five firearms. *Id.* at 123-24.

Finally, Trooper Jeff Lehman testified that after speaking with Booth, he went to the elder Mr. Hogan's apartment and recovered the five firearms, identified as trial exhibits 1 thourgh 5. *Id.* at 132-33.

### 4. Trial court's order denying motion for directed verdict

At the close of the government's case, petitioner moved for a directed verdict. The trial judge denied the motion, reasoning in pertinent part as follows:

> I've listened closely to the testimony. We've had testimony from Mr. Kopulos, who's the owner of the residence at 13025 Devoro Road and we received testimony from Mr. Booth who is a co-Defendant in this matter, although has plead guilty and gave testimony here today. Mr. Hogan, Sr., the father of the Defendant in this matter, and to whom the rifles had been taken at his residence or apartment on Lansing Avenue from when they were collected by Trooper Lehman who also testified in this matter. The testimony is that in deed the gentleman apparently went to the address of 13025 Devoro Road with the indication that they were going to steal some marijuana that was located there. Mr. Hogan apparently was able to gain access into the home and then let the other gentlemen in. And searching through the home, there is a number of guns, apparently, a couple of shotguns and other muzzle loaders that were located in the bedroom of Mr. Kopulos where he indicated he kept them in the corner. There's testimony that the Defendant, Mr. Hogan, apparently looked at one of the guns, placed it back and then went about his business, apparently, trying to find marijuana or whatever; and that the other two gentlemen, Mr. Booth and the gentleman that was with him then ultimately loaded up the guns, put them in the trunk of the car, marijuana was also taken and put into the trunk of the car, and then the trunk was closed. The gentlemen tried to leave and lo and behold, here's Mr. Kopulos coming home and grabs the two gentlemen. Mr. Hogan hits him in the face and everybody gets away. However, Mr. Kopulos obtained the license number whien then led the State Police to put out a "be on the lookout" for the vehicle which was stopped and then apparently at Ridgewood Vista by Leone

> Township police, it sounds like, and gentlemen were taken into custody. The rifles then found at the father's apartment. The motion is that the Count VI, a felony firearm, does not apply because it wasn't, at least this Defendant, Mr. Hogan, was not assisting in the larcenies of the firearms at the time because the firearms had already been stolen and the larceny completed as, apparently, the situation being true of the home invasion. The Court finds, however, that simply because they're outside the door of the home and the firearms have been put in the trunk, the larceny, in and of itself, has not been completed. There is a period of time where they have to get away, apparently from Mr. Kopulos who said he also got in his car and went and looked for them but couldn't find them and then called the police and, ultimately, we know from the testimony now the guns were dropped off at Mr. Hogan Sr.'s house and when they find them, the guns are gone. But the larceny doesn't end simply because they're out the door. They still have the firearms. And, in deed, the testimony is that Mr. Hogan, the Defendant, junior, then made arrangements through the father to keep the guns in a closet until they could be taken back. And, apparently, at this time or shortly thereafter, Mr. Hogan, Jr., the Defendant, told his father, Mr. Hogan, Sr., that in deed the guns had been stolen. The Court is satisfied that the home invasion in the first degree, as well as the larceny of the firearms is still going on, and certainly, the elements were part and parcel of the possession of firearm in the commission of the home invasion first degree and/or larceny of the firearm, at least at the point that we're talking about here, the motion's denied.

Tr. Trans. 138-41. Petitioner presented no witnesses. *Id.* at 141. The trial court instructed the jury on all six counts that petitioner must have either directly committed the crime or been an aider and abettor pursuant to M.C.L. § 767.39.[1] Trial Trans. 167-73.

### 5.     Discussion

Petitioner contends that he did not violate any of these statutes, claiming that, at most, the evidence showed that he went into the residence to steal marijuana. The court disagrees.

---

[1] M.C.L. § 767.39 abolished the distinction between an accessory and principal in Michigan, providing as follows:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

8

Viewing the evidence in the light most favorable to the prosecution, the court concludes that the government presented sufficient evidence to convict petitioner. Based on this evidence, any rational trier of fact could find that petitioner and his companions broke into the house to steal marijuana or other items, and that they possessed firearms at some time during the commission of this felony. While petitioner did not possess a firearm when he entered the residence, the Michigan Court of Appeals has held that "a defendant may be guilty of felony-firearm where the underlying conviction is home invasion based on the theft of firearms." *People v. Zavorski*, No. 227973, 2002 WL 31187865 at *4 (Mich. App. Oct. 1, 2002). *See also, Zavorski v. Cason*, 1:04-cv-372 (W.D. Mich. June 27, 2007 and Aug. 16, 2007) (denying habeas petition after finding sufficient evidence for petitioner's conviction of first degree home invasion and felony firearm where the subject firearm was stolen during the home invasion).

Accordingly, the state court's decision and petitioner's convictions were neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor were the decision and convictions based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

      **B.**      **Sentencing issue**

           **1.**      **State's calculation of sentencing guidelines**

Next, petitioner contends that the trial court mis-scored the offense variables in calculating his sentence by including points for him as the leader of the criminal enterprise. Sent. Trans. at 7-9. The sentencing guidelines for first degree home invasion as scored by the court resulted in a minimum prison term of 78 to 130 months. *Id.* at 12-13. This claim does not present

9

an issue cognizable under § 2254.  Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Federal habeas corpus relief does not lie for errors of state law, which includes the state's computation of petitioner's prison term.  *Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003), citing *Estelle*, 502 U.S. at 68.  *See Austin v. Jackson,* 213 F.3d 298, 300 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).  "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'"  *Id.* at 301, *quoting Williams v. New York*, 337 U.S. 241, 245 (1949).   In this case, petitioner's sentences fell within the maximum statutory limits, i.e., 20 years for first degree home invasion, 5 years for larceny of a firearm, and 2 years for felony firearm.

The state courts are the ultimate expositors of state law in federal habeas proceedings. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle*, 502 U.S. at 67-68.  To grant the relief sought by petitioner would be tantamount to this court overruling the ultimate expositor of state law with respect to the scoring of offense variables under the state's sentencing guidelines. Accordingly, petitioner's claim for habeas relief challenging the trial court's calculation of his sentence should be denied.

**2.** *Blakely* **issue**[2]

---

[2] The petition and state court filings contain brief references to *United States v. Booker*, 543 U.S. 220 (2005).  Petitioner, however, does not explain how the *Booker* decision, in which the Supreme Court held that the federal sentencing guidelines are subject to jury trial requirements of the Sixth Amendment, affects his claim under Michigan's indeterminate sentencing scheme.

Finally, petitioner contends that the sentence violated his due process under *Blakely v. Washington*, 542 U.S. 296 (2004). *Blakely* involved the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Applying the Washington mandatory sentencing guidelines, the trial judge found facts that increased the maximum sentence faced by the defendant. The Supreme Court held that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely*, 542 U.S. at 301 (*citing Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Relying on *Blakely*, petitioner claims that the sentencing guidelines range was enhanced by the scoring of offense variables on the basis of facts not proven to a jury beyond a reasonable doubt. *Blakely*, however, is inapplicable to petitioner's sentence in this case. As previously discussed, petitioners sentences fell within the maximum statutory limits. Unlike the State of Washington's determinate sentencing system, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan*, 475 Mich. 140, 160, 715 N.W.2d 778 (2006) (*citing* M.C.L. § 769.8). Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; *and see People v. Babcock*, 469 Mich. 247, 255 n. 7, 666 N.W.2d 231 (2003) (*citing* M.C.L. § 769.34(2)). Therefore, under Michigan law, the trial judge sets the minimum sentence (within a certain range), but can never exceed the maximum sentence. *Drohan*, 475 Mich. at 160. Because the trial court can never exceed the maximum sentence set by statute, Michigan's indeterminate sentencing scheme, unlike the

11

determinate sentencing scheme at issue in *Blakely*, does not infringe on the province of the finder of fact, and, thus, does not violate *Blakely*. *See Blakely*, 542 U.S. at 304-05, 308-09; *Tironi v. Birkett,* 252 Fed. Appx. 724, 725 (6th Cir. 2007) ("*Blakely* does not apply to Michigan's indeterminate sentencing scheme"); *Brown v. Jones,* 5:05-cv-166, 2009 WL 559869 at *15 (W.D. Mich. March 4, 2009); *Lipsey v. Bell*, 1:08-cv-60, 2008 WL 1836953 at *4 (W.D. Mich. April 22, 2008) (listing cases).

### V.     Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  May 8, 2009                                      /s/ Hugh W. Brenneman, Jr.
                                                         HUGH W. BRENNEMAN, JR.
                                                         United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).